IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THA SEEGMILLER, aka THA H. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>ACCREDITED HOME LENDERS, INC. et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:11-cv-00771 CW<br><br>Judge Clark Waddoups |

This matter is before the court on a Motion for Temporary Restraining Order filed by Plaintiff Tha Seegmiller. The motion has been opposed by Defendants Vericrest Financial, Inc., Bank of New York Mellon as Trustee for the CIT Mortgage Loan Trust 2007-1 ("New York Mellon"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). For the reasons stated below, the court issues a temporary restraining order staying the foreclosure proceedings scheduled for October 19, 2011 against Tha Seegmiller's residence.

**FACTUAL BACKGROUND**

1. Plaintiff signed a Deed of Trust on December 15, 2006, which named Accredited Home Lenders, Inc. as the creditor, First American Title as the Trustee, and MERS as the beneficiary. (Dkt. No. 7, Ex. 2). The property identified in the Deed of Trust is Plaintiff's residence located in Lehi, Utah (the "Property").

2. On February 23, 2011, Paul M. Halliday recorded a Notice of Default and Election to Sell the Property. Mr. Halliday represented in the notice that he was the Successor Trustee. (Dkt. No. 7, Ex. 4).

3.	Also on February 23, 2011, Mr. Halliday sent a letter to Plaintiff informing her that her loan had been referred to his "office to begin foreclosure proceedings." The letter further stated that New York Mellon was "the creditor to whom the debt is owed." (Dkt. No. 2, Ex. E).

4.	On March 3, 2011, Plaintiff filed for bankruptcy. The action was dismissed pursuant to 11 U.S.C. § 521 because Plaintiff failed to provide all required information to the Bankruptcy Court. (Dkt. No. 7, Ex. 5).

5.	On March 8, 2011, MERS executed an Assignment of Deed of Trust. The Assignment states that MERS, as the nominee for Accredited Home Lenders, Inc., assigned all beneficial interest in the Deed of Trust to New York Mellon. The notary attests that a representative of MERS appeared before her on March 8, 2011 to execute the document. The document was recorded on March 14, 2011. Although the document was not executed or recorded until March 2011, the document purports that the effective date of the Assignment was February 23, 2011. (Dkt. No. 7, Ex. 6).

6.	On March 15, 2011, New York Mellon executed a Substitution of Trustee notice that named Mr. Halliday as the Trustee under the Deed of Trust. The notice states "[t]he Beneficiary ratifies and confirms any action taken on the Beneficiary's behalf by the herein appointed Successor Trustee prior to the recording of the Substitution of Trustee." Although the notice was executed in March 2011, it was not recorded until May 10, 2011. (Dkt. No. 7, Ex. 7).

7.	In June 2011, Plaintiff re-filed for bankruptcy. On August 22, 2011, the automatic stay was lifted to allow Defendants to proceed with foreclosure of the Property. (Dkt. No. 7, Ex. 9).

## ANALYSIS

I.    **Standard for Injunctive Relief**

"Preliminary injunctive relief is appropriate if the moving party establishes" the following:

> (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.

*United States v. Questar Gas Mgmt. Co.*, No. 2:08cv167, 2010 U.S. Dist. LEXIS 66320, at *9 (D. Utah July 1, 2010) (quoting *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)). The court notes that Plaintiff is a *pro se* litigant. Accordingly, her pleadings must be construed liberally. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

    A.    **Substantial Likelihood of Success on Merits**

Viewing Plaintiff's "Amended Version of Complaint" liberally, Plaintiff has asserted the following: (1) quiet title claim against Defendants based on the securitization theory; (2) claim against MERS for allegedly violating the automatic bankruptcy stay; and (3) claim against Defendants for wrongful default. Although it is unlikely that Plaintiff can prevail on the first two causes of action due to present case law, the record currently before the court shows that Plaintiff has a substantial likelihood of success on the merits on her third cause of action.

New York Mellon was not the original lender or beneficiary of the Deed of Trust. Until MERS assigned its beneficial interest to New York Mellon, it had no rights or authority regarding the Property. Moreover, it had no right to appoint a Successor Trustee. Accordingly, the date New York Mellon acquired beneficial interest in the Property is crucial in this matter.

The Assignment of Deed of Trust was executed and notarized on March 8, 2011. Yet, MERS

states in the document that the assignment was effective February 23, 2011.  Merely stating this in the document does not make it so.  Absent some other proof to show that the assignment actually was made on February 23, 2011, the effective date will be March 8, 2011.  If the effective date is March 8, 2011, all actions taken by New York Mellon and Mr. Halliday prior to that date would be void.  This includes voiding the Notice of Default.

Section 57-1-22(1)(c) of the Utah Code does not cure this defect.  Although a *beneficiary* may ratify actions taken by a trustee prior to the recording of the substitution of trustee, New York Mellon had to first be the beneficiary before it could ratify Mr. Halliday's actions.  If New York Mellon was not the beneficiary on February 23, 2011, then it cannot ratify the actions Mr. Halliday took on that date.

Under Utah law, "[t]he detailed procedural requirements for a trustee's sale of real property are intended to protect the debtor/trustor."  *Occidental/Nebraska Fed. Savings Bank v. Mehr*, 791 P.2d 217, 220 (Utah Ct. App. 1990) (quotations and citation omitted).  Specifically, "[t]he objective of the notice requirements is to protect the rights of those with an interest in the property to be sold."  *Id*.  Although immaterial errors will not invalidate a trustee's sale, the purported errors at issue here are significant.  Plaintiff therefore has a substantial likelihood of prevailing on the merits of this claim.

**B.     Irreparable Harm**

Divestiture of a property right without following notice requirements can constitute a denial of procedural due process.  Although "some kinds of constitutional violations" presumptively cause irreparable harm, a procedural due process violation , alone, typically "does not automatically trigger a finding of irreparable harm."  *Ezell v. City of Chicago*, 651 F.3d 684, 2011 U.S. App. LEXIS

14108, at *32–33 & n.10 (7th Cir. 2011) (quotations and citations omitted).  It therefore is necessary for a court to examine "whether a protected property or liberty interest exists, and if such an interest exists, then determine what procedures are necessary to protect that interest."  *Techsnabexport, Ltd. v. United States*, 795 F. Supp. 428, 435 (Ct. Int'l Trade 1992) (citing *American Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985)).  For a property right "to be protected by the Constitution it must be some interest worthy of protecting."  *Id.* (*American Ass'n of Exporters*, 751 F.2d at 1250).  Additional factors to consider are whether the moving party already has been divested of his or her property right, *see Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 81 (1st Cir. 2009), and whether the moving party timely filed for injunctive relief, *see Morales-Narvaez v. Rossello*, No. 94-1808, 1995 U.S. App. LEXIS 26064, at *5 (1st Cir. 1995).

Here, the property interest that Plaintiff has in her home is, without question, worthy of protection.  Procedures have been established by the Utah legislature to ensure that if a person is divested of property through a trustee's sale, he or she received proper notice.  Such procedures are not a mere formality that can be glossed over by possible back-dating of documents.  Moreover, Plaintiff timely sought injunctive relief before the trustee's sale.  Consequently, injunctive relief can preclude the procedural due process violation from taking effect.  Under such circumstances, the court concludes that Plaintiff will suffer irreparable harm if an injunction does not issue.

    **C.**    **Balancing of the Equities and Public Interest**

The balance of the equities tips in favor of Plaintiff.  As stated above, the notice requirements are a safeguard established by the legislature on behalf of property owners in Utah.  Divesting Plaintiff of her property without following such procedures is significant in comparison to the harm Defendants may suffer in having to wait to foreclose until they have followed all statutory

requirements. Moreover, the public has an interest in ensuring that the foreclosure laws are followed so that important property interests are safeguarded. The court therefore concludes these elements have been sufficiently met to issue a temporary restraining order.

The court directs the parties to contact the court to schedule a hearing regarding this motion. At the hearing, the court will determine whether the injunction should continue. It shall further determine whether Plaintiff must provide a security for the injunction, and if so, the amount of the security.

## **ORDER**

Until further order of the court, the court hereby enjoins Defendants from proceeding with a trustee's sale of the Property.

DATED this 19th day of October, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Court